OPINION
{¶ 1} Debra Henderson appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, which granted a decree of divorce ending her marriage to William Henderson, named Mr. Henderson as the residential parent of their *Page 2 
children, and determined child support, spousal support, and the division of marital assets. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} The Hendersons were married in 1996, and two children were born of the marriage. After the first child was born, Mr. Henderson stopped working as a carpenter and stayed at home with the child while Mrs. Henderson maintained her employment as a pharmaceutical sales representative. Both parents were very involved in the children's care.
 {¶ 3} In 2005, Mr. Henderson filed a complaint for divorce. The magistrate conducted a hearing in December 2006. The magistrate's decision was filed in February 2007, and both parties filed objections. The trial court filed the final entry and decree of divorce in September 2007. In its decree, the trial court named Mr. Henderson as the residential parent, denying Mrs. Henderson's request for shared parenting. Mrs. Henderson was awarded the standard order of visitation. The court also calculated child support and spousal support based on an assumption of $10,000 in income for Mr. Henderson, a sum that Mrs. Henderson had argued was unreasonably low. Further, the court effectuated a division of the marital assets.
 {¶ 4} Mrs. Henderson appeals, raising three assignments of error.
 II {¶ 5} Mrs. Henderson's first assignment of error states:
 {¶ 6} "THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES IN THIS CASE CONSTITUTES REVERSIBLE ERROR AND AN ABUSE OF DISCRETION REGARDING THE FAILURE TO AWARD SHARED PARENTING; THE AWARD OF PARENTING TIME TO APPELLANT; AND THE FAILURE TO INTERVIEW THE MINOR *Page 3 
CHILDREN TO ASCERTAIN THEIR WISHES."
 {¶ 7} Mrs. Henderson contends that the trial court should have ordered shared parenting, as she requested. She cites numerous factors in support of her position, including her close bond with the children, her superior education and reading ability, and the parties' abilities to agree on many significant decisions regarding the children in the past.
 {¶ 8} At the hearing, it was undisputed that both parents were involved in the care of the children, had a close bond with the children, and could provide an appropriate living environment. The psychologist also opined that significant time with each parent would benefit the children. However, there was substantial evidence about the parties' inability to cooperate with one another. For example, the parties fought about what time to exchange the children on holidays, and such a dispute on Christmas day actually resulted in violence by Mrs. Henderson toward Mr. Henderson in front of the children. Although Mrs. Henderson did present evidence that the parties had agreed on matters such as the children's doctors, school, and religion while they were married, there was little evidence that they had behaved amicably since their separation. In fact, even relatively minor decisions, such as extracurricular activities and drop off times, had become contentious in the aftermath of the separation.
 {¶ 9} The evidence also established that Mr. Henderson had been the children's stay-at-home parent their entire lives and that he was comfortable with and capable of continuing to provide their primary care. The evidence did not support Mrs. Henderson's assertions that Mr. Henderson had contributed to the obesity of one of the children or that his learning disability was impeding the children's progress in school. Moreover, the court concluded that Mr. Henderson did not seem to harbor as much anger as Mrs. Henderson. *Page 4 
 {¶ 10} Furthermore, the shared parenting arrangement proposed by Mrs. Henderson was designed primarily to accommodate her work schedule and would have involved frequent exchanges of the children. The guardian ad litem testified that he thought it was in the children's best interest to minimize transfers between the parents in order to provide greater stability for the children.
 {¶ 11} The trial court reasonably concluded that "the parties had an inability to communicate and cooperate and to make decisions jointly with respect to their minor children and that it was not in the children's best interest that shared parenting be ordered."
 {¶ 12} Although Mrs. Henderson also contends that the trial court erred in failing to interview the children about their wishes regarding parental responsibilities, we note that Mrs. Henderson did not request such an interview until after the magistrate's decision was filed. Thus, her request was untimely. Moreover, the psychologist expressed the opinion that the children were not sufficiently mature to express their preferences for custody. The children were in kindergarten and first grade at the time of the divorce.
 {¶ 13} The first assignment of error is overruled.
 III {¶ 14} Mrs. Henderson's second assignment of error states:
 {¶ 15} "THE SPOUSAL SUPPORT AND CHILD SUPPORT AWARDS IN THIS CASE CONSTITUTE REVERSIBLE ERROR AND AN ABUSE OF DISCRETION WHERE THE TRIAL COURT FAILED TO CORRECTLY DETERMINE APPELLEE'S EARNING ABILITY."
 {¶ 16} Mrs. Henderson claims that Mr. Henderson "can do just about anything, in terms *Page 5 
of home building or remodeling," and therefore the court abused its discretion in using $10,000 as his annual income. The evidence established that Mr. Henderson had earned $10,000 the previous year working on carpentry proj ects, but Mrs. Henderson asserted that he was capable of earing $50 per hour, or $104,000 per year. She contends that the court's use of $10,000 in its child and spousal support calculations was "ridiculous."
 {¶ 17} Before the Hendersons' children were born, Mr. Henderson had worked with his father in his father's longstanding construction and remodeling business. Mr. Henderson's father was ready to retire around the time that the Hendersons' first child was born, so Mr. and Mrs. Henderson agreed that he would stay home with the children. Thereafter, Mr. Henderson was out of the workforce for several years.
 {¶ 18} Mr. Henderson began to reestablish a carpentry business the year of the divorce, working primarily on proj ects for friends and acquaintances. He testified that he had considered joining an existing business, but had decided against it because he believed he would retain greater flexibility in caring for the children by working on his own. He estimated that it would take two to three years for his business to get established again.
 {¶ 19} Based on the evidence presented, the court calculated spousal and child support based on Mrs. Henderson's income of $120,000 per year, which was undisputed, and Mr. Henderson's income of $10,000, which was the most he had earned in the previous seven years. The court awarded spousal support of $1,500 per month for twenty-four months and child support of $1,291.66 per month. The court retained jurisdiction over spousal support and child support. The trial court's income determination and support calculations were reasonable under the circumstances presented. *Page 6 
 {¶ 20} The second assignment of error is overruled.
 IV {¶ 21} Mrs. Henderson's third assignment of error states:
 {¶ 22} "IT WAS REVERSIBLE ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO FAIL TO CONSIDER THE TAX RAMIFICATIONS OF THE PROPERTY DIVISION."
 {¶ 23} Mrs. Henderson objects to the trial court's division of marital assets because she contends that the court did not account for the tax consequences of liquidating different types of assets. She had apparently hoped to receive more liquid assets to apply toward the purchase of her own house.
 {¶ 24} The record demonstrates that Mrs. Henderson did not present any evidence about the tax ramifications of transferring various assets. In our view, the trial court was not required to sort out all of the tax consequences of its property distribution if the parties did not present evidence on this issue. The magistrate concluded that, on the evidence presented, any finding about the tax consequences of the property division would have been "purely speculative," and the trial court agreed. In the absence of any evidence on this issue, the trial court acted within its discretion in dividing the property as it did.
 {¶ 25} The third assignment of error is overruled.
 V {¶ 26} Having overruled Mrs. Henderson's assignments of error, the judgment of the trial court will be affirmed. *Page 7 
FAIN, J. and DONOVAN, J., concur.
Copies mailed to:
Douglas W. Geyer
Edward A. Frizzell
Harold R. Kemp
Jacqueline L. Kemp
 Hon. Thomas J. Capper *Page 1